# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# ST. JOSEPH DIVISION

| | |
|---|---|
| BRYCE MARKHAM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 15-06133-CV-SJ-RK |
| ) | |
| ) | |
| INTERNATIONAL BROTHERHOOD OF ) | |
| ELECTRICAL WORKERS D/B/A IBEW ) | |
| LOCAL 545, AND TONY WERTIN, ) | |
| ) | |
| Defendants. ) | |

## **ORDER**

Before the Court are three motions stemming from Plaintiff Bryce Markham ("Plaintiff")'s action against Defendant International Brotherhood of Electrical Workers d/b/a IBEW Local 545 ("Defendant Union") and individual Defendant Tony Wertin ("Defendant Wertin") (collectively, "Defendants"). The motions are (1) Defendant Union's motion to dismiss (doc. 5), (2) Plaintiff's motion to remand (doc. 10), and (3) Plaintiff's motion for leave to file an amended petition (doc. 31). At the crux of the first two motions is whether Plaintiff's state court action is pre-empted by federal labor law pursuant to the National Labor Relations Act ("NLRA") and/or the Labor Management Relations Act ("LMRA"); if so, Defendant Union argues that the action should be dismissed as barred by a six-month statute of limitations. Because Plaintiff's claim as to Defendant Union is pre-empted by federal labor law and is barred by the six-month statute of limitations, Defendant Union's motion to dismiss (doc. 5) is GRANTED. Plaintiff's remaining state law claim against Defendant Wertin is DISMISSED. Plaintiff's motion to remand (doc. 10) is DENIED. Plaintiff's motion for leave to file an amended complaint (doc. 31) is DENIED as futile.

## Background[1]

Plaintiff filed his action in the Circuit Court of Buchanan County, Missouri, on or around September 1, 2015. (Doc. 1-2.) As to the parties in the action, Markham alleges that he was a citizen residing in St. Joseph, Missouri. (*Id.* at 4.) He further alleges that Defendant Union is an unincorporated labor organization doing business in St. Joseph, Missouri, and that Defendant Union "is an organization which exists for the purpose, in whole or in part, of collective bargaining or of dealing with employers concerning grievances, terms or conditions of employment, or for other mutual aid or protection in relation to employment." (*Id.* at 4-5.) Additionally, Plaintiff alleges that Defendant Wertin was a supervisor of Defendant Union's Apprenticeship Training Program (the "Program") in which Plaintiff was enrolled and that Defendant Wertin was as an authorized agent of Defendant Union. (*Id.* at 5.)

Plaintiff was enrolled in the Program from approximately 2008 until Defendant Union terminated him on June 9, 2014, prior to Plaintiff's completion of the program. (*Id.*) Completion of the Program is required before a person can become a "journeyman" and gain eligibility for full union representation. (*Id.* at 7.) A significant portion of the Program involves accruing a certain number of on-the-job training hours with a number of local electrical repair and installation companies. (*Id.*) Defendant Wertin and the committee he supervises, the Joint Apprentice Training Committee (the "JATC"), are responsible for assigning trainees to various companies for their required on-the-job hours. (*Id.*) The JATC is comprised exclusively of managers and/or owners of the electrical repair and installation companies to which trainees are assigned for on-the-job training. (*Id.*)

Plaintiff suffers from Crohn's disease. (*Id.*) In May 2013, he passed out during a lunch break from an on-the-job training assignment. (*Id.*) He returned to work later that day but called in sick the following day. (*Id.*) On the day Plaintiff called in sick, Defendant Wertin called Plaintiff and stated that Plaintiff had been terminated from the company to which he had been assigned. (*Id.*) Defendant Wertin also advised Plaintiff to bring in a doctor's note documenting the reason for the absence. (*Id.*)

---

[1] The factual history is drawn largely from Plaintiff's complaint and exhibits. As set forth more fully below, at this stage, the Court must "accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Cole v. Homier Distrib. Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010) (citation omitted).

Plaintiff is prescribed Marinol, a legal, synthetic version of tetrahydrocannabinol ("THC"), the active compound in marijuana, as treatment for severe pain associated with his Crohn's disease. (*Id.*)  The day after he called in sick, Plaintiff provided a doctor's report to Defendant Wertin regarding his illness. (*Id.* at 8.)  Part of the doctor's report indicated that Plaintiff had tested positive for THC but also that he was prescribed Marinol. (*Id.*)  Pursuant to the policies of the Program, because Plaintiff tested positive for THC, despite his Marinol prescription, Plaintiff was required to submit to a urinalysis. (*Id.*)  A test conducted shortly thereafter indicated no presence of marijuana in his system. (*Id.*)  Despite that test result, Plaintiff was placed on probation from the Program on June 11, 2013. (*Id.*)  Plaintiff additionally alleges that he requested the reasonable accommodation that he be allowed to continue taking his prescribed Marinol for treatment of Crohn's Disease but that Defendant Union refused to engage in any interactive process to determine a reasonable accommodation for his disability. (*Id.* at 10.)

At the time Plaintiff was placed on probation, he was told that it was because his on-the-job training had been terminated "for cause" from two companies affiliated with the Program, although he was not told what the cause was. (*Id.* at 8.)  During the approximately five-month period prior to being placed on probation, Plaintiff had called in sick twice, both times because of his Crohn's disease, the second of which was the day he passed out on his lunch break. (*Id.*)  When Plaintiff was placed on probation, Plaintiff told Defendant Wertin he believed it was done because of his illness. (*Id.*)

Plaintiff was placed on probation from June 2013 until January 2014. (*Id.*)  After January 2014, the rate at which Plaintiff was placed for on-the-job training assignments was drastically reduced compared to other members of the Program, including those with fewer hours completed. (*Id.*)  During the rare times that Plaintiff was assigned to on-the-job training, it was for very small jobs or for jobs that did not provide actual training but rather relegated him to doing menial work for others. (*Id.* at 9)  On at least one occasion, Plaintiff was not given the industry-standard amount of notice prior to the start of the on-the-job training assignment that conflicted with plans he could not cancel. (*Id.*)  As a result of the change in the frequency and nature of the on-the-job training opportunities to which Plaintiff was assigned, Plaintiff was unable to accrue the required number of on-the-job training hours at a rate comparable to his peers in the Program. (*Id.*)

3

On June 9, 2014, Plaintiff was removed from the Program, an action he alleges was done at the suggestion and/or direction of Defendant Wertin. (*Id.*) Plaintiff attended two meetings in July and August of 2014 with Defendant Union in an attempt to appeal his dismissal from the Program, but he was never readmitted. (*Id.*)

Although Plaintiff did not name any of his employers in this action, an exhibit to the pleadings states the following:

> I, Bryce Markham, bring this Charge of Discrimination against Respondents International Brotherhood of Electrical Workers Local 545, Miljavac Electric Corporation, Jim Miljavac, Action Electric Corp., Steven 'Buck" Dragoo, P1 Group, Inc., Randy Schultz, Pinnacle electric, Josh Combs, R/S Electric Corp., Wayne Weisenberger, Roger Bricker, and Missouri Electric, Inc. . . . Respondents Miljavac Electric, Action, P1, Pinnacle, R/S and Missouri Electric are employers within the meaning of the MHRA. . . .

(Doc. 1-2 at 28; parenthetical abbreviations omitted.)

That exhibit also references the roles of the Program as well as those of various employers:

> Respondent failed to engage in any interactive process and discharged me for having a disability, for perceiving that I had a disability, and/or in retaliation for engaging in the protected activity of reporting my disability. IBEW placed me on probation because of my Crone's [sic] disease, and chose, together with the Companies and the Managers, to prevent me from completing my on-the-job training as part of the Joint Apprenticeship Training Program. IBEW, the companies, and the Managers denied an accommodation of occasional absences due to my Crone's [sic] disease, and also denied an accommodation of forgiveness for potential positive testing for THC because of prescriptions I receive as a result of my Crone's [sic] disease. Respondents also refused to place me for on-the-job training at the Companies because of my Crone's [sic] disease. . . . I also have reason to believe that I am not the only person that has been discriminated against because of a disability, and that IBEW, the Companies, and the Managers have engaged in a pattern or practice of running apprentices with disabilities out of the program.

(*Id.* at 32.)

Plaintiff brought four counts in state court under the Missouri Human Rights Act ("MHRA") on September 1, 2015. As to Defendant Union, Plaintiff alleges (1) failure to accommodate, (2) disability discrimination, and (3) retaliation. As to Defendant Wertin, Plaintiff alleges aiding and abetting. Defendants removed the case to federal court and filed a motion to dismiss for failure to state a claim. (Docs. 1, 5.) Following the filing of Defendant Union's motion to dismiss and Plaintiff's motion to remand (doc. 10), the Court reviewed the Petition and

4

the removal notice and noted that there remained questions as to whether federal subject matter jurisdiction exists in this case. The Court directed the Defendants to file a copy of the collective bargaining agreement and the Program and directed the parties to file memoranda of law accordingly. (Doc. 20.) In response, Defendant Union provided two documents and all parties provided supplemental briefing.

## Discussion

### A. Motion to Remand

On the face of Plaintiff's petition, no claim under federal law is pleaded; Plaintiff asserts only state law claims. Plaintiff moves the Court to remand this case on the basis that removal was improper. Specifically, Plaintiff argues that his claims of discrimination arise outside the scope of federal labor law and are not pre-empted by the NLRA or the LMRA. Defendants argue that the state law claims are completely pre-empted in the field of labor management relations and thus the claims are necessarily converted into claims under the NLRA and the LMRA, making removal appropriate.

#### *1. Standard*

A non-removing party may move for remand, and the motion for remand will be granted if "it appears that the district court lacks subject matter jurisdiction." *See* 28 U.S.C. § 1447(c). Defendants, as the parties invoking jurisdiction, bear the burden of proving that all prerequisites to jurisdiction are satisfied. *Greene v. Ameritrade, Inc.*, 279 F.3d 590, 598 (8th Cir. 2002) (citation omitted). In other words, it is presumed that a cause of action lies outside of the limited jurisdiction of this Court, and the burden of establishing otherwise rests entirely with the party seeking jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citation omitted). Any doubts about the propriety of removal are resolved in favor of remand. *Cent. Ia. Power Coop. v. Midw. Indep. Transmission Sys. Operator*, *Inc*., 561 F.3d 904, 912 (8th Cir. 2009).

Pursuant to 28 U.S.C. § 1441(a), a defendant may remove an action to federal court only if that court would have original subject matter jurisdiction over the action. If the federal court lacks diversity jurisdiction over an action, as is uncontested is the case here, then the court must have federal-question jurisdiction over the action in order to have subject matter jurisdiction. A federal court has federal-question jurisdiction over an action when the action "arises under" the Constitution or the laws of the United States pursuant to 28 U.S.C. § 1331. This federal-question

5

jurisdiction is governed by the rule of the well-pleaded complaint, under which "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citation omitted).

Potential defenses, including a federal statute's pre-emptive effect, do not provide a basis for removal. *Id.* at 398-99. Put another way, "'a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case,' does not cause the plaintiff's claim to arise under federal law." *Hurt v. Dow Chem. Co.*, 963 F2d 1142, 1144 (8th Cir. 1992) (quoting *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 14 (1983)). Accordingly, because a plaintiff is the master of his or her complaint, he or she can generally choose to avoid federal jurisdiction by asserting only state law claims. *Caterpillar*, 482 U.S. at 398-99.

Where, however, Congress intends that a federal statute "completely" pre-empt an area of state law, any complaint alleging claims under that area of state law is presumed to allege a claim arising under federal law. *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987). Complete pre-emption applies only in the extraordinary circumstance when Congress intends not merely to pre-empt a certain area of state law, but also to transfer jurisdiction to decide the pre-emption question from state to federal courts. *Id.* at 63-65. The Supreme Court has recognized that § 301 of the LMRA completely pre-empts state law claims. *Gaming Corp. of Am. v. Dorsey & Whitney*, 88 F.3d 536, 543 (8th Cir. 1996) (citing *Metro. Life*, 481 U.S. at 65).

### 2.    *This Case is Pre-empted by the LMRA*

Section 301(a) of the LMRA states that "[s]uits for violations of contracts between an employer and a labor organization . . . or between any such labor organizations, may be brought in the district court of the United States. . . ." 29 U.S.C. § 185(a). In *Allis-Chalmers Corp. v. Lueck*, the Court interpreted that provision to mean that when the resolution of a state law claim is substantially dependent upon analysis of the terms of a collective bargaining agreement, the claim is pre-empted and federal labor law applies. 471 U.S. 202, 220 (1985); *see also Caterpillar*, 482 U.S. at 394 (citation omitted). Jurisdiction under § 301 extends to suits brought by individual employees asserting rights under a collective bargaining agreement, even though the employee is not a party to the collective bargaining agreement. *See Smith v. Evening News Ass'n*, 371 U.S. 195, 200 (1961). Further, § 301 pre-emption can apply as to an employee's

6

action against a union "if the duty to the employee of which the tort is a violation [was] created by a collective-bargaining agreement." *Holschen v. Int'l Union of Painters & Allied Trades/Painters District Council # 2*, 598 F.3d 454, 461 (8th Cir. 2010) (citation omitted).

A state law claim is pre-empted by § 301(a), however, only if resolution of the claim requires the interpretation of a collective bargaining agreement. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 413 (1988). In *Lingle*, the United States Supreme Court explained:

> [Section] 301 pre-emption . . . says nothing about the substantive rights a State may provide to workers when adjudication of those rights does not depend upon the interpretation of such agreements . . . . [E]ven if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is "independent" of the agreement for § 301 purposes.

486 U.S. at 409-410. As an example of "independent" claims, the *Lingle* Court cited state laws that "grant nonnegotiable rights that are shared by all state workers." *Id*. at 407 n.7. In other words, there is no federal pre-emption if the state claim is "independent of the collective bargaining agreement." *Taggart v. Trans World Airlines, Inc.*, 40 F.3d 269, 272-74 (8th Cir. 1994) (citation omitted).

More to the point, "[w]here a state law claim is based on a collective bargaining agreement or is 'inextricably interwined' with the contents of a collective bargaining agreement, the claim is subject to § 301 preemption." *Schuver v. MidAm. Energy Co.*, 154 F.3d 795, 799 (8th Cir. 1998) (quoting *Allis-Chalmers Corp.*, 471 U.S. at 213); *see also Trs. of Twin City Bricklayers Fringe Benefit Funds v. Superior Waterproofing, Inc.*, 450 F.3d 324, 330 (8th Cir. 2006) (holding § 301 completely pre-empts state law claims "founded on rights created by" a collective bargaining agreement or "whose resolution is substantially dependent upon or 'inextricably intertwined' with interpretation of the terms of such an agreement"). Put another way, the Eighth Circuit has instructed that in applying the § 301 pre-emption doctrine, state law claims are pre-empted by the LMRA when the claims either "(1) are premised on duties created by the relevant collective bargaining agreement such that they are 'based on' the agreement, or (2) require interpretation of the collective bargaining agreement such that they are 'dependent upon an analysis' of the agreements." *Williams v. Nat'l Football League*, 582 F.3d 863, 881 (8th Cir. 2009) (citation omitted).

7

Here, Plaintiff's claims are brought under the MHRA. Thus, the question is whether Plaintiff's state law claims are "substantially dependent upon" an analysis of and are "inextricably intertwined with" the collective bargaining agreement. To prove his state law claims of failure to accommodate a disability, disability discrimination, retaliation for reporting a disability, and aiding and abetting, Plaintiff will have to show, among other things, that he had a disability.[2] The MHRA defines disability to be any "physical or mental impairment which substantially limits one or more of a person's major life activities, being regarded as having such an impairment, or a record of having such an impairment, which with or without reasonable accommodation does not interfere with performing the job. . . ." MO. REV. STAT. § 213.010(4).

To establish he is disabled under the MHRA, then, Plaintiff would have to show that Defendants could have reasonably accommodated him. Under similar facts, the Eighth Circuit held that whether or not an employer is able to "reasonably accommodate" an employee requires reference to an existing collective bargaining agreement. *Davis v. Johnson Controls, Inc*., 21 F.3d 866, 868 (8th Cir. 1994). In *Davis*, a production employee at a manufacturing company suffered a back injury. *Id.* at 867. About a year later, the employee was cleared to return to work. *Id.* The company did not allow the employee to return to work, and the employee brought an action under the MHRA, arguing that he was discriminated against based on his "handicap." *Id*. The company asserted that the action was pre-empted by § 301 because interpretation of the collective bargaining agreement was necessary. *Id*. The Eighth Circuit agreed, noting that the reasonable-accommodation determination would require an examination of the seniority rights of the collective bargaining agreement. *Id*. This is because Missouri law provides that in determining whether an accommodation is reasonable under the MHRA, one factor to be considered is "the authority to make the accommodation under the terms of any bona fide agreement." MO. CODE REGS. ANN. tit. 8, § 60-3.060(1)(G)(3)(D); *see also Williams v. Wireco Worldgroup, Inc.*, No. 10-1263-CV-SJ-SOW (W.D. Mo. June 8, 2011) (doc. 16) (holding that

---

[2] For example, the MHRA makes it an "unlawful employment practice" for an employer "to discharge . . . or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . disability." MO. REV. STAT. § 213.055.1(1)(a). To establish a *prima facie* case of disability discrimination under the MHRA, Plaintiff must prove: (1) that he had a disability within the meaning of the statute; (2) that the employer took an adverse action against him; and (3) that the plaintiff's disability was a contributing factor in the employer's adverse action. *See Hervey v. Mo. Dep't of Corr.*, 379 S.W.3d 156, 160, 819-20 (Mo. 2012) (en banc).

plaintiff's MHRA claims of disability discrimination and failure to accommodate were pre-empted by the LMRA).

Here, a review of the relevant documents confirms that the collective bargaining agreement will have to be interpreted to address Plaintiff's claims as to Defendant Union in several respects. Plaintiff alleges that he was enrolled in the Program from approximately 2008 until June 9, 2014, at which time Defendant Union terminated him prior to completion of the Program. Plaintiff also alleges that a significant portion of the Program involves accruing a certain number of on-the-job training hours with a number of local electrical repair and installation companies. Additionally, Plaintiff alleges he was placed on probation in June 2013 until January 2014, and that afterwards, the rate at which he was placed for on-the-job training was drastically reduced compared to other members of the Program, including those with fewer hours completed.

Key to this case, Plaintiff alleges that during the rare times that Plaintiff was assigned to on-the-job training, it was for very small jobs or for jobs that did not provide actual training but rather relegated him to doing menial work for others. As a result, Plaintiff alleges he was unable to accrue the required number of on-the-job training hours at a rate comparable to his peers in the Program. Also key to this case, Plaintiff additionally alleges that he requested the reasonable accommodation that he be allowed to continue taking Marinol, as prescribed to him for treatment of Crohn's Disease, but that Defendant Union refused to engage in any interactive process to determine a reasonable accommodation for his disability. Further, Plaintiff alleges that as to his probation, he was told that it was because his on-the-job training had been terminated "for cause" from two companies affiliated with the program, although he was not told what the cause was.

With those allegations in mind, the Court turns to Article V of the "Inside Agreement," which is the agreement between Defendant Union and the employers that was in force at the time Plaintiff was an apprentice. Section 5.03 of Article V confers authority over apprentices solely to the JATC for review, evaluation, and resolution. Section 5.06 further confers to the JATC the full authority for issuing job training assignments and transferring apprentices to and from employers. Additionally, Section 5.07 provides for the cancellation of apprenticeship indenture pursuant to the local apprenticeship policies and standards. Those standards are set forth in a separate document, "Statement of Policies for Apprentices," and delineate the terms for training, placement, and cancellation of an apprentice's indenture. *See Transportation-Commc'n*

*Employees Union v. Union Pac. R.R. Co.*, 385 U.S. 157, 161 (1966) (holding that "to interpret a [collective bargaining agreement,] it is necessary to consider the scope of other related collective bargaining agreements, as well as the practice, usage and custom pertaining to all such agreements.")  The standards also set forth terms and conditions for continued participation in the Program and specific grounds for termination from the Program.  The standards also encompass substance abuse testing and probation periods.

Plaintiff's claims thus implicate the Inside Agreement and accompanying standards for apprentices.  Plaintiff would necessarily need to establish, *inter alia*, that he met certain qualifications, address whether reasonable accommodations could be made pursuant to these agreements, and whether probation was reasonable.  In short, the Court necessarily would be required to refer to and interpret these documents to determine what actions, if any, Defendant Union could take as to Plaintiff.  *See Davis*, 21 F.3d at 868; *Holschen*, 598 F.3d at 459-61 (plaintiff's state laws claim alleging that the defendant union had "blackballed" him by not referring his name to prospective employers through the defendant union's non-exclusive hiring hall were pre-empted because collective bargaining agreements would have to be examined to determine extent of the union's duties to its members and scope of employee's relationship with prospective employers); *Whitney v. Boilermakers Local 83*, No. 10-0615-CV-W-SOW (W.D. Mo. Jan. 26, 2011) (doc. 10) (plaintiff's MHRA claims of retaliation and constructive discharge against the union and the union employee were pre-empted by LMRA in part because the right to a job referral arose exclusively under collective bargaining agreement and resolution of retaliation claim was intertwined with and dependent upon analysis of that agreement); *Pitts v. Plumbers & Steamfitters Local Union No. 33*, 718 F. Supp. 2d 1010, 1014-18 (S.D. Ia. June 23, 2010) (plaintiff's state law claims were pre-empted by LMRA where court will necessarily have to examine and interpret collective bargaining agreement and the practices, usages, and customs associated with the agreement to determine whether plaintiff was qualified for referrals in question).

### 3. *This Case is Pre-empted by the NLRA*

In addition to being pre-empted by the NLRA because interpreting the collective bargaining agreement would be necessary, Plaintiff's claims are also pre-empted by the duty of fair representation under the NLRA.  Section 9(a) of the NLRA grants labor unions exclusive status as the bargaining representative for its members.  *See* 29 U.S.C. § 159(a).  Along with this

10

exclusive status comes the judicially created "duty of fair representation." *See NLRB v. Allis-Chalmers Mfg. Co.*, 388 U.S. 175, 181 (1967). This duty requires a union "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes*, 386 U.S. 171, 177 (1967) (citation omitted). A union must discharge its duty both in bargaining with the employer and in its enforcement of the resulting collective bargaining agreement. *Id*. The duty of fair representation entails that a union owes a duty "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Id*. at 177. Claims of breach of the duty of fair representation under the NLRA completely pre-empt state law claims for the same actions. *See Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6*, 493 U.S. 67, 83-84 (1989).

Key to this case, the Breininger Court held that the duty of fair representation applies in the hiring setting:

> Only because of its status as a Board-certified bargaining representative and by virtue of the power granted to it by the [CBA] does a union gain the ability to refer workers for employment through a hiring hall. Together with this authority comes the responsibility to exercise it in a nonarbitrary and nondiscriminatory fashion, because the members of the bargaining unit have entrusted the union with the task of representing them. That the particular function of job referral resembles a task that an employer might perform is of no consequence. The key is that the union is administering a provision of the contract, something that we have always held is subject to the duty of fair representation. The undoubted broad authority of the union as exclusive bargaining agent in the negotiation *and administration* of a collective bargaining contract is accompanied by a responsibility of equal scope, the responsibility and duty of fair representation.

Id. at 87-88 (citations omitted; emphasis in original).

In resolving whether Defendant breached its duty of representation, the Court finds persuasive *Pitts*, 718 F. Supp. 2d at 1010. In *Pitts*, the plaintiff alleged she was an apprentice (and later a journeyman) when she was subject to sexual harassment and discriminatory remarks. *Id*. at 1012. She complained to an agent of the union but continued to face harassment and eventually was terminated by an employer. *Id*. The plaintiff in Pitts alleged the union refused to allow her to work even when certain employers called the hiring hall and requested her specifically. *Id*. at 1013. Additionally, she alleged neither the union nor a union manager took any action to protect her from further harassment. *Id*.

11

As to the NLRA, the *Pitts* court noted that the plaintiff's allegation that the union retaliated against her for engaging in protected conduct by refusing to refer her for available jobs is an allegation of "discrimination in hiring hall referrals," which "constitutes an unfair labor practice under §§ 8(b)(1)(A) and 8(b)(2) of the NLRA." *Id.* (quoting *Farmer v. United Bhd. of Carpenters and Joiners of Am., Local 25*, 430 U.S. 290, 304 n.11 (1977)). The *Pitts* court thus concluded that the plaintiff's allegations that the union failed to protect her from sexual harassment are pre-empted on the ground that they arise solely in connection with the union's activities as representative and thus that the discrimination claim could not be said to arise "wholly outside the ambit of those obligations circumscribed by the duty of fair representation." *Id.* at 1019 (citing numerous cases holding that disability, racial, and gender discrimination and harassment claims were claims of a breach of the union's duty of fair representation and thus pre-empted under the NLRA); see also *Martin v. Conopco, Inc.*, No. 10-0397-CV-W-GAF, 2010 WL 2541234, at *2 (W.D. Mo. June 17, 2010) (holding that plaintiff's claims of harassment were pre-empted under the NLRA where plaintiff asserted claims against her employer and named the union as a defendant; plaintiff's allegations could be reasonably interpreted as alleging the union did not fairly represent her in complaints to employer).

As in *Pitts*, and consistent with governing jurisprudence, it is evident that Plaintiff's claims are pre-empted under the NLRA. Similar to the plaintiff in *Pitts*, Plaintiff alleges discrimination by Defendant Union and employers in failing to provide a reasonable accommodation for his disability in on-the-job training -- activity that falls squarely within the purview of "discrimination in hiring hall referrals," which "constitutes an unfair labor practice under §§ 8(b)(1)(A) and 8(b)(2) of the NLRA." *Pitts*, 718 F. Supp. 2d at 1018. In so holding, the Court notes Plaintiff's argument that he "is not alleging that Defendants failed to adequately represent him because of discrimination at the hands of an employer, or that Defendants chose to inadequately represent him in disputes he had with employers because of discriminatory reasons." (Doc 8 at 8.) But Plaintiff's pleadings belie the argument that he was not alleging discrimination against his employers and/or accompanying lack of union representation in at least two respects. First, Plaintiff alleges that the committee that fired him was composed of union members and managers of companies. (Doc. 1-2 at 7.) Second, the exhibits to the pleadings allege discrimination against numerous employers in addition to Defendant Union even though, as in *Pitts*, Plaintiff elected not to name any of the employers in this action. (Doc.

1-2 at 28, 32).  Thus, Plaintiff's allegations constitute activity prohibited by the NLRA as it falls within the broad ambit of Defendant Union's role as exclusive bargaining agent in the administration of a collective bargaining contract so as to be accompanied by a responsibility of equal scope, the responsibility and duty of fair representation.  *Breininger*, 493 U.S. at 87.

For the above reasons, the Court has jurisdiction under both the LMRA and the NLRA.

## B. Motion to Dismiss

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Union moves the Court to dismiss Plaintiff's petition for failure to state a claim upon which relief can be granted.  Defendant Union contends that dismissal is warranted because Plaintiff's action is barred by the statute of limitations.

### *1. Standard*

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed for "failure to state a claim upon which relief can be granted."  A complaint must provide "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  A claim should be dismissed if it only "offers labels and conclusions or a formulaic recitation of the elements of a cause of action."  *Id.*  (citation and quotation marks omitted).  Put another way, "[t]o survive a motion to dismiss, a claim must be facially plausible, meaning that the 'factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Cole v. Homier Dist. Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). The Court must "accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party."  *Id.* (quoting *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005)).

In ruling on a 12(b)(6) motion to dismiss, the Court is not limited to the four corners of the complaint.  *Outdoor Cent., Inc. v. GreatLodge.com, Inc.*, 643 F.3d 1115, 1120 (8th Cir. 2011). The court may consider "the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record."  *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010) (citation omitted).  The Court can therefore consider the complaint as well as the attached exhibits of public record.  *See also Porous Media Corp. v. Pall*

13

*Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (court may consider "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint" (citation omitted)).

Moreover, the Court may grant a motion to dismiss when a claim is barred under a statute of limitations. *Varner v. Peterson Farms*, 371 F.3d 1011, 1016 (8th Cir. 2004). "[W]hen it appears from the face of the complaint itself that the limitation period has run, a limitations defense may properly be asserted through a Rule 12(b)(6) motion to dismiss." *Id.* (citation and quotation marks omitted).

### 2. This Action is Barred by the Statute of Limitations

Defendant Union moves the Court to dismiss Plaintiff's MHRA claims against it as barred by the applicable statute of limitations. The Court agrees that the action is barred because it is hybrid "§ 301/duty of fair representation action." *See* 29 U.S.C. § 160(b)); *see also Livingstone v. Schnuck Market, Inc.*, 950 F.2d 579, 581 (8th Cir. 1991) (citing *DelCostello v. Int'l Brh. of Teamsters*, 462 U.S. 151, 169-71 (1983)) (holding that a § 301/duty of fair representation action has a six-month statute of limitations).

A suit is labeled a hybrid § 301/duty of fair representation action because it combines a straightforward § 301 breach of contract suit with a suit against the union for breach of the union's duty of fair representation. *Livingstone*, 950 F.2d at 581. "[R]egardless of whom the employee sues, a hybrid claim is one in which the employee has a cause of action against both the union and the employer, the two actions are 'inextricably independent', and the case to be proven is the same whether the employee sues the employer, the union or both." *Id.* at 582 (citations omitted). The six-month statute of limitations period begins to run when "the union's breach of duty injures the employee." *Barlow v. Am. Nat'l Can Co.*, 173 F.3d 640, 642 (8th Cir. 1999) (citation omitted).

Here, it is apparent from the face of the Petition that Defendant Union's alleged breach of the duty of fair representation occurred in excess of six months before Plaintiff filed this action. Plaintiff pleads that he attended his last meeting with Defendant Union in August of 2014 in an attempt to appeal his dismissal from the Program. However, he did not file his Petition in state court until September 1, 2015. Thus, the action against both Defendants is dismissed. *See Smithrud v. City of St. Paul*, 746 F.3d 391, 396 n.3 (8th Cir. 2014) (a district court may *sua*

14

*sponte* dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) where it appears from the face of the complaint that the limitation period has run).

C.      **Motion to Amend**

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, a court should grant leave to amend freely "when justice so requires." However, a party does not have an absolute right to amend. *Hartis v. Chi. Title Ins. Co.*, 694 F.3d 935, 948 (8th Cir. 2012) (citations omitted). Whether to grant a motion for leave to amend is within the sound discretion of the district court. *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 497 (8th Cir. 2008). Key to this case, leave to amend would be futile if the amended claim is time-barred by an applicable statute of limitations. *Enervations, Inc. v. Minn. Mining and Mfg. Co.*, 380 F. 3d 1066, 1068-69 (8th Cir. 2004).

Because this action is barred by the statute of limitations, Plaintiff's motion to amend is denied as futile.

## Conclusion

Accordingly, it is ORDERED that Plaintiff's motion to remand (doc. 10) is DENIED.

It is further ORDERED that Plaintiff's claims against Defendants are DISMISSED for failure to state a claim with prejudice.

It is further ORDERED that Plaintiff's motion for leave to file an amended petition (doc. 31) is DENIED.

**SO ORDERED.**

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: March 29, 2016

15

Case 5:15-cv-06133-RK   Document 36   Filed 03/29/16   Page 15 of 15